Good morning, Your Honor. May it please the Court. Ryan Olney on behalf of the Plaintiffs' Appellants. I'd like to reserve four minutes of my time for rebuttal. This morning I'd like to address the Plaintiffs' motion for a new trial based on the jury's exposure to the 911 call that the District Court excluded before trial is unduly prejudicial. And unless the Court has questions, we would submit on the motion for summary judgment and the other issues raised in our briefs. The District Court abused its discretion in excluding the entire juror declaration from Mr. Shudik except for the limited purpose of establishing that yes, the jury did listen to the 911 call. But this Court's extraneous evidence cases uniformly hold that juror testimony is also admissible to establish the scope and duration of the jury's exposure. And Mr. Shudik states, we kept playing them over and over, the whole audio, about half a dozen times. Some parts of the audio, we played more than that. We were trying to pick out every word. And this establishes that the jury did not simply listen to the 911 call. The jury fixated on the 911 call. Juror testimony is also admissible to establish that the jury discussed the information and the context in which those discussions occurred. In Sassoonian, this Court held admissible juror testimony that extraneous information was discussed in the context of the criminal defendant's motive. The Court, this Court found that prejudicial and ordered a new trial. So too here, Mr. Shudik states, we listened to those calls a lot and discussed them. We talked about it, referring to the 911 call, in the jury room. We talked about the call, the video clip, and whether or not the young man, Murad, was violent. And this shows us that the jury connected the inadmissible prejudicial 911 call to the central disputed fact in this case, which is whether Firas Murad was so violent and out of control that though unarmed, Officer Hernandez's use of deadly force was reasonable. This testimony shows that the 911 call was very prejudicial to plaintiff's case, and yet the District Court considered none of it. Mr. Shudik's testimony also makes clear that the jury was not following the Court's instructions, although that's also clear without Mr. Shudik's testimony. And there are two examples of that. The first is, at the close of evidence, the District Court gave instruction number 30 to the jury to notify me immediately if you are exposed to any information that was not admitted at trial. Mr. Shudik's declaration makes clear that didn't happen. Once the jury was exposed to the prejudicial inadmissible 911 call, the jury did not notify the Court immediately. Instead, it listened to the entire recording half a dozen times. That's close to an hour of audio. The recording is eight and a half minutes long. And even when the jury did notify the Court, it didn't tell the Court that they had received inadmissible evidence. They simply said we're missing the admissible dispatch call. What information did the jury receive from the have? Significant information, Your Honor. The 911 call included multiple specific novel details that under this Court's decision, Athlamenia, established the call as non-cumulative. First, the 911 call stated that Feroz Murad may have jumped out of a second-story window. The admissible dispatch call stated that he fell out of the second-story window. Now, someone who jumps out of the window is either very out of control or unafraid of great bodily injury and is the type of person more likely to attack an officer. Second, the 911 call stated that Feroz was screaming, irate, and erratic. Not one single witness at trial testified that Feroz Murad was screaming. In fact, two of the firefighters on the scene and a third eyewitness each testified that Feroz Murad never yelled and that he never screamed. Now, somebody who is screaming, irate, and erratic is the type of person more likely to attack an officer. But the other problem this creates for the plaintiff's case is that if the jury credited the 911 call, and we know that they did, this impeaches three of plaintiff's eyewitnesses. There's a big difference between screaming and not screaming. I won't demonstrate, but this suggests that the plaintiff's witnesses, three of them, either weren't paying attention or weren't telling the truth. Next. Why does it impeach them? I mean, why couldn't the jury just say, okay, well, that's interesting. He was screaming at one time, but by the time the fire department wasn't on the scene when the guy came out of the window. So the fact that he was screaming and fell out of the window is not something that the fire department could have testified to. It makes it more likely if he was screaming before that he was screaming later. And it is the defendant's burden to disprove the possibility of prejudice. The court's standard requires that once the jury is exposed to extraneous information, and it's undisputed that it was, there is a presumption of prejudice. And it is the defendant's burden to establish that there is not even a reasonable possibility that the information could have affected the outcome. So Judge Fitzgerald says, look, this wasn't the central issue. The central issue was what was Murad doing at the moment of the shooting? He says that was the issue at the trial. And as to that central issue, the recordings really don't add anything. And respectfully, we disagree because... Is that a finding of fact by the district court? Do you have to come up with clear error to disapprove that? No, Your Honor. That is not a finding of fact because what we're talking about is the relevance of pre-incident conduct on what came later. And under the Boyd case, which the defendants relied upon, the court has held at times that pre-incident conduct can corroborate how an individual acts later. And it certainly makes more probable the disputed fact that Firas Murad was acting in a violent and out of control during the moment of shooting. And the reason that's so damaging to the case is because the court ruled that all the pre-incident conduct was inadmissible. So while we were able to put on ample evidence about what the conduct was at the moment of the shooting, we were forbidden from putting on any evidence by the court's ruling as to what happened before Officer Hernandez arrived. But there's a third critical detail that the jury learned from the 911 call and only from the 911 call. And that is that the 911 caller said, we need the police. The admissible dispatch call stated that the police were there only to assist the fire department. This completely reframes the incident in the jury's mind because if the firefighters are the lead responders, then firefighters respond to provide medical care to injured patients. But police are lead responders to gain control of dangerous suspects. So this is all evidence that came only from the 911 call. Moreover, the jury heard this not once, but six times. Each of the witnesses who testified at trial got to testify once. The 911 caller testified six times. And the most important detail is that unlike this, this was ultimately a credibility contest. That's what the case was. It was between competing eyewitness testimony about what happened. There was no clear video of what happened. The only witness, the only eyewitness whose testimony, whose credibility was entirely unimpeached at the end of trial was a 911 caller because she was never cross-examined. And in this court's case in Eslamenia, this court held that that is a critical detail making the evidence non-cumulative and prejudicial, even where it overlaps with information that was adduced at trial because those witnesses were cross-examined. Here, the 911 caller was not. There is certainly the reasonable possibility that the 911 call could have affected the verdict. And I would add that the district court applied the wrong standard. The district court considered whether there was a reasonable possibility that the 911 call did affect the verdict, not whether it could have. That's a different standard. It's a higher standard and it's erroneous. But looking at the correct standard, every Dixon factor, which are the five factors the court considers in determining whether to order a new trial, points in our favor. First, whether the material was actually received and if so, how. It's undisputed that the material was received and the undisputed facts establish that it was the defendant's misrepresentations that caused the jury to be exposed to this evidence. Number two, the length of time the evidence was available to the jury. It's undisputed the evidence was available to the jury from the beginning of deliberations until 1139 a.m. the next day, just three hours or about three and a half hours before the verdict came back. That means the jury had the audio to listen to, might have gone home thinking about it, might have gone to bed thinking about it, could have come back the next day and resumed listening to the audio. This completely would have been devastating to the plaintiff's case. Third, the extent to which the juror discussed and considered it. Mr. Schutick's declaration also establishes, and there are no facts to controvert this, that the jury discussed the recording and they considered the recording and they ultimately made credibility determinations based upon the recording. Fourth, whether the material was introduced before a verdict was reached, also undisputed that that's what happened here. And then finally, whether there are any other matters which may bear on the issue of reasonable possibility. I'd like to focus on what you think are the actual errors in Judge Fitzgerald's November 1st order. I'm looking on page 17 of that order. It's also ER 17. In the first paragraph, I see language which I think you have just, we're probably just referring to where Judge Fitzgerald concludes accordingly, there is no reasonable possibility that admissible recordings affected the verdict. And you think that the correct standard is whether they could have affected the verdict. That's correct. If we send this back and Judge Fitzgerald copies this all over again and then just sticks the words could have in there, are you done? We're not because there was an additional error of excluding the Schutick declaration, which establishes that the magnitude of prejudice and that the court, the jury did not follow the court's instructions. We know that the jury did not follow instruction 30 because the jury did not notify the court immediately upon listening to the tape. It listened to it six times and never notified the court that had been exposed to extraneous information. Juror note one, which is at ER 670, states only that the audio in exhibit 363 does not include the initial call and they want to hear that. The Schutick declaration also establishes that the jury did not listen to the curative instruction. Unless there are no further questions, I'd like to reserve the remainder of my time. That's fine. Thank you. Good morning, your honors. May it please the court. My name is Scott Dixler. I represent the city of Long Beach, Chief Luna and Officer Hernandez. I'd like to begin quickly with just addressing this idea that the district court applied the wrong legal standard in evaluating the new trial motion. If you look at page eight of the excerpts of record, which also is page eight of the order, the court cites this court's Montes case and says, if a juror has been exposed to extraneous evidence, their trial court should grant a new trial if there is a reasonable possibility that the material could have affected the verdict. So right there, the district court articulated the standard precisely correctly and there's no basis for a limited remand of the sort that Judge Bybee mentioned. I'd also like to address the court's questioning regarding cumulativeness. Judge Fitzgerald was precisely correct. The excluded recordings to which the jury was exposed added nothing new to the jury's factual mix. And I'll address the counsel's arguments point by point. First of all, counsel says that the excluded recordings introduced the concept that Morad might have jumped. And that's just wrong. The excluded recordings instead said, the 911 caller said, he jumped or fell, I don't even know. So there was no statement that he jumped. It was simply a statement that the caller didn't know. So a statement, I don't know, doesn't add anything, let alone anything material to what was in front of the jury here. Second, the idea that Morad was screaming and irate. Now the dispatch call didn't use those terms, but the dispatch call did say he was acting violent and that he was 647F, which meant he was intoxicated to the point that he couldn't take care of himself or others. So saying that such a person who's acting violent and intoxicated to that degree is irate, it adds nothing new of any consequence. Finally, the statement, we need police. It was no secret to the jury that police were called to the scene here. And again, that's no surprise in a situation where Mr. Morad was intoxicated to the degree that he was and acting violent, which the dispatch call, which was properly admitted, told Officer Hernandez and then the jury heard that as well. So Judge Fitzgerald was precisely correct that this was cumulative. It added nothing new that the jury hadn't already heard. And so for that reason, it wasn't prejudicial. Counsel, I've got a couple of questions about Judge Fitzgerald's November 1st order. I'm a little confused. So at pages 9 and 10, the judge discusses whether he has to go to plain error review because the objections were either forfeited or waived. And he declines to find waiver, and in fact, declines to find forfeiture and says, I'm going to go to the merits. Then on page, let's see, I'm sorry. Yeah, 16, we have a discussion of plain error. Plain error seems like that would be the standard if you found forfeiture. And he said he wasn't going to find forfeiture. He was going to go to the merits. So I'm a little confused as to why the judge is talking about plain error review. Now, he does say there was no, there was no, any sort of error, let alone plain error is his final, the final two lines on that page. So maybe it's, it's harmless, but I'd like you to address that. So the way I understand the order is that there are two species of waiver at issue. And then our briefing tracks this as well. First, there's an argument that the city made below, and that we make again on appeal, that there was a waiver of the entire argument that a new trial is necessary due to the exposure to excluded evidence. Because in the moment before the jury reached a verdict, plaintiff's counsel expressly agreed with the district court's proposal for argument. Is that as distinguished from plain error? Yeah, yeah. In essence, it's an invited error argument. We also cite cases for the principle that if you affirmatively agree with what the court's doing, you can't come on appeal and complain about it. So that was an argument that was made, that this entire new trial theory, this plaintiff's entire new trial argument was waived. Then there's a sub-argument. No review whatsoever. Right, right. Because when there was still a chance to do something before the jury returned a verdict, plaintiff's affirmatively, it's not that plaintiff's just stayed silent. Plaintiff's counsel affirmatively told the district judge, well, the district judge said, okay, I think we can remedy this with a curative instruction. Here's what I plan to tell the jury. And plaintiff's counsel said, that's fine with plaintiffs, your honor. So having said that, the whole challenge should be waived. So the district judge went- But the judge doesn't say, he considers it. Right. And then so I think- I'm not going to, he says, I'm going to do it on the merit. So I'm a little confused then as to why he uses a plain error standard later on. He cited plain error, and we do this in the briefs to address challenges to the jury instruction. The idea that the jury instruction, the curative instruction that was given was deficient. Now again, so there's case law that says where a plaintiff doesn't properly preserve a challenge to a jury instruction, it can nonetheless be reviewed in civil cases for plain error. I see. And he does say that the instruction constituted any sort of plain error. Exactly. And it didn't. As evidenced, first of all, by the fact that plaintiffs below agreed with it. The district court said in some substance what he planned to tell the jury. Plaintiff's counsel said, that's fine with the plaintiff. Only after learning that there was a defense verdict, did plaintiff's counsel contend for the first time that actually no curative instruction would have sufficed, or that even if it would, the curative instruction here was somehow too weak. And that argument's wrong in any event. The curative instruction told the jury explicitly, do not consider the excluded recordings. The district judge, furthermore, took the erroneous disc from the jurors. And as he said in his post-trial order, that's about as clear and unambiguous as you can get in terms of instructing the jury to disregard it. So the curative instruction ameliorated the situation. The jury presumptively followed it. And there's no admissible testimony suggesting that the jury didn't follow the instruction. Even Schutick's declaration doesn't say, it doesn't mention the instruction one way or the other. You seem to pare back the declaration a little bit too far, because the rule, does the rule exclude statements about the playing of the tape and the number of times it was played? Isn't that evidence about an extraneous influence? And so if it's played five times, that's not about the juror's mental process. I agree, Your Honor. But I think a fair reading of the court's order indicates that the order isn't quite as broad as plaintiff's counsel is representing. And I direct the court to page 19 of the excerpts of record. The district judge issued a separate written ruling on the admissibility of Schutick's declaration. And in the key paragraph here, where the court is stating its ruling on page 19, the court says, the declaration of Robert Schutick is inadmissible under rule 606b to the extent it reveals the subjective effect of evidence on the jurors and the jurors' deliberative process. Now that's exactly correct. That's the heartland of what rule 606b excludes. The court continues, it is overruled only to the extent the declaration indicates that the jurors did consider the inadmissible recording. So I think a fair reading of the order, I mean, consider implies more than just heard, but I'm not, I'm going to close my ears to how many times the jury heard it. I think consider fairly includes, now look, the judge didn't go line by line and say this line is admissible, this line is inadmissible, but it's plaintiff's burden on appeal to show error. There's not a presumption that the judge's evidentiary rulings are erroneous. Quite the contrary. It's reviewed under the abuse of discretion standard. So I think a fair reading of the court's order shows that the court did exactly what rule 606b required. And if the court didn't, any such error would almost necessarily be harmless. Whether the jury heard the excluded recording once or six times, the fact of the matter is, as Judge Fitzgerald properly determined, there was no new information in the excluded recording. So that was equally true whether it was heard once or six times. So for that reason, too, the district court's ultimate decision should be affirmed. Unless the court has any further questioning, I'll submit. Thank you. Thank you, Your Honor. Briefly, Judge Fitzgerald cites applies the wrong standard three times on ER 55 paragraph 3, ER 65 paragraph 4, and ER 71 paragraph 1. Second, the statement that the defendants read from the judge's order is not what the judge actually applied in excluding the Chudik declaration. On ER 21, Judge Fitzgerald wrote the declaration of Robert Chudik is only admissible to the extent it provides that the jury listened to the 911 recordings that were incorrectly sent back to the jury room labeled Exhibit 363, ellipse. The rest of the declaration is clearly inadmissible. It is relevant that the jury listened to the recording not once but six times. This is among the Dixon factors that the court is required to consider. The second part, which you were reading, you didn't read the rest of the sentences, is the rest of the declaration is clearly inadmissible as it goes to the subjective effect of evidence on Mr. Chudik and the rest of the jurors. So wouldn't the statements about playing it over and over be covered by the first part? Because that's the part to the extent it provides the jury listened to and not the subjective effect part. I mean his argument is that he didn't do it line by line. He said it's two categories. Isn't this in the first category that was admissible? No, it's not covered because the court, the district court, also said what we learned from the Chudik declaration we already knew from other sources. And even if the district court had admitted or considered that aspects of the Chudik declaration, then the error wasn't failing to mention it once in the district court's order or apply it under the Dixon factors, which it was required to do. So the reasonable reading of the district court's order is that all of that evidence was excluded. It is one of the listed factors and he didn't mention that in his order, the multiple claims? It never appears in the district court's order that the jury listened to it more than once. And yes, the... He has mentioned on ER 21, that's page three of the September 27th order, he says, the extent to which the jurors followed the court's instructions, the recordings that the jurors listened to during their deliberations. What pieces of evidence the jurors discussed during deliberations. Yeah, he didn't set out how many times they listened to it, but it's... And that's a critical factor. I listened to this recording. I listened to it several times because I had a hard time hearing it. It's not a great surprise that the jurors would have listened to it several times. If they're going to listen to it once, they were probably going to listen to it several times just to try to figure out what it was. And that also goes to the district court's error in understating and misapplying the level of prejudice here. Again, it is the defendant's burden at the new trial motion to establish that there is not even a reasonable possibility that the recordings could have affected the verdict. So the extent to which there is any ambiguity, and we don't believe that there is, in the absence of evidence from the defendants, and they put forward none on this point, your Honor's conclusion is the right one. It should have been inferred that the jury listened to the recordings multiple times. That should have been considered under the Dixon factors. And that is just one of the many areas in which the district court misapplied and failed to identify the devastating nature that this evidence had on the plaintiff's case. If the evidence was devastating, why did you agree to the corrective instruction? Because at the time, your Honor, no one could have imagined that... Yeah, but that's having your cake and eating it, too, counsel. It feels a little unfair for you to say, that's fine, judge, but as soon as we get the verdict, well, obviously this was a devastating piece of evidence. I'd like to make a different point. No one could have understood that the jury would not follow the court's curative instructions. It's presumed that the jury will follow the court's curative instruction. We're required under the law to follow that presumption. Only after the verdict did we learn from the Shuddeck Declaration, and frankly from the record as a whole, that the jury was not following the court's instructions. It clearly violated instruction 30, and it most certainly violated the curative instruction as well. But that's evidence that we cannot consider. Is that correct? No, that's evidence that must be considered, your Honor. The Shuddeck Declaration, when it talks about the listing to the recording over and over again, that proves that the jury violated instruction number 30 to immediately notify the court of its exposure. I'm sorry, I thought you were talking about that they violated the instruction to ignore it. Well, that comes from the Shuddeck Declaration. And can we consider that? You can, because the admissible portions of the Shuddeck Declaration include whether the jury discussed the recording and the context of those discussions. And what we have from the Shuddeck Declaration, there's no mention of the curative instruction. It says that we listened to it, we discussed it. Does the Shuddeck Declaration make clear that they continue to discuss it after they got the curative instruction? It does not make that explicit, but again, because it's the defendant's burden to disprove even the reasonable possibility that the recording could have been... That would require speculation on our part, wouldn't it? No, it's the most reasonable inference from the record. That they ignored their instructions and that they continued to discuss it after they got the curative instruction? Yes, because... Contrary to all of our presumptions, the juries follow their instructions? Well, the Shuddeck Declaration and frankly the record as a whole proved that the jury did not follow instruction 30. The jury never informed the court that had been exposed to evidence. So we know right there that a presumption is overcome. The jury was not following the court's instructions. The Shuddeck Declaration also establishes that the jury, they listened to it, they discussed it in the context of whether Mr. Murad was violent. It also affected credibility determinations that they made as to other admissible evidence. That's admissible under the Rutherford case. That is testimony that the court must consider. And the only reasonable inference to draw from that is that the court did not disregard the information. I think that's the only fair reading of the declaration. Again, it's the defendant's burden to prove this didn't happen and none of these facts are controverted. All right. Thank you, counsel. I will let you go over. Thank you, Your Honor. Thank you. The case just argued will be submitted.
judges: Bybee, Moskowitz, Collins